Michael E. Schwimer, Esq. (SBN 255567)
Mitch Rosensweig, Esq. (SBN 320480)
**SCHWIMER WEINSTEIN LLP**
2665 Main Street, Suite 200
Santa Monica, CA 90405
Telephone: (310) 957-2700
Facsimile: (310) 957-2701

Attorneys for Plaintiff
ELIZABETH ROSEN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ELIZABETH ROSEN, an individual;

Plaintiff(s),

v.

DAVID DUEL; REBECCA DUEL; ILANA YAMTOOBIAN; TERRY POLESIE; KATHY COOK; RAFFI SHIRINIAN; JENNIFER GETZ; DAVID NOURAFSHAN, URBAN BLOX LLC; URBAN BLOX CRIMINAL ENTERPRISE; SURF REALTY CORPORATION; R & LS INVESTMENTS, INC.; KIMBERLY ROBERTS STEPP; STEPP COMMERCIAL; THORNTON PROPERTY ONE LLC; RIF INVESTMENTS-2 LLC; CENTRAL REALTY ADVISORS, INC.; URBAN DEVELOPER LLC; S BONITA ONE, LLC; 351 SB TWO LLC; IY EK PARTNERS, LLC; 27 OZONE, LLC; NOURAFSHAN VENICE PROPERTIES, LLC; FORWARD MANAGEMENT LONG BEACH, INC.; JOSEPH MISKABI; LAW OFFICES OF JOSEPH MISKABI; RICHARD DAGGENHURST; FELMAN, DAGGENHURST & EL DABE; DAGGENHURST LAW PC; and DOES 1 through 100, inclusive;

Defendant(s).

Case No.:

**COMPLAINT FOR:**

(1)  **VIOLATION OF 18 U.S.C. § 1962(C)**
(2)  **VIOLATION OF 18 U.S.C. § 1962(D)**
(3)  **FRAUD/INTENTIONAL MISREPRESENTATION**
(4)  **FRAUDULENT CONCEALMENT**
(5)  **UNLAWFUL EVICTION**
(6)  **NEGLIGENCE**
(7)  **NUISANCE**
(8)  **BREACH OF COVENANT OF QUIET ENJOYMENT**
(9)  **BREACH OF IMPLIED WARRANTY OF HABITABILITY**
(10)  **HOUSING DISCRIMINATION IN VIOLATION OF FEHA [GOV. CODE § 12955].**
(11)  **VIOLATION OF CIVIL CODE § 1940.2**
(12)  **VIOLATION OF CIVIL CODE § 1942.5**
(13)  **VIOLATION OF CIVIL CODE § 1954**
(14)  **VIOLATION OF CIVIL CODE § 52.1**
(15)  **VIOLATION OF UNRUH CIVIL RIGHTS ACT [CIVIL CODE § 51]**
(16)  **UNLAWFUL BUSINESS PRACTICES [CAL. BUS. &**

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405


PROF. CODE § 17200]
(17)   INTENTIONAL
         INFLICTION OF
         EMOTIONAL DISTRESS
(18)   BAD FAITH RETENTION
         OF SECURITY DEPOSIT
(19)   VIOLATION OF LOS
         ANGELES MUNICIPAL
         CODE, ARTICLE 5.3
(20)   VIOLATION OF LOS
         ANGELES COUNTY
         CODE § 8.52.130
(21)   RECISSION

DEMAND FOR TRIAL BY JURY

Plaintiff ELIZABETH ROSEN ("Plaintiff" or "Ms. Rosen"), by way of this Complaint against DEFENDANTS; and DOES 1 through 100, inclusive, (collectively "Defendants") alleges as follows:

**INTRODUCTORY ALLEGATION**

1.    This action arises out of a fraudulent scheme perpetrated by the Urban Blox criminal enterprise to defraud "rent-controlled" tenants in order to obtain recovery of rental properties, raise the rents to market rates, and unjustly enrich the Defendants. The Urban Blox criminal enterprise acquired several properties that are subject to the Los Angeles Rent Stabilization Ordinance ("RSO") (Chapter XV of the Los Angeles Municipal Code), which was enacted in response to critical shortages in safe and sanitary affordable rental housing and to combat unscrupulous landlords who were compounding these problems. Upon acquiring such properties, the Urban Blox criminal enterprise's

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

fraudulent scheme targeted disabled, low-income, elderly, and long-term rent-controlled tenants, including Plaintiff ELIZABETH ROSEN, as well as several similarly situated tenants, including, but not limited to, Gessica Smith, Claire Campolo, Annie Morrisette, Lucas Cyril Plouviez, Adam Silver and Julia Wolov. As a result of this fraudulent scheme, conducted through wire and mail fraud, several rent-controlled tenants, including those named herein, were divested of possession of their rent-controlled properties. The relief sought includes, without limitation, damages under 18 U.S.C. §§ 1964, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), compensatory damages, statutory damages, civil penalties, punitive damages, and attorney's fees.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States, and it presents a federal question within this Court's jurisdiction for violations of 18 U.S.C. §§ 1961, 1962 and 1964, *et seq.*

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to preside over Plaintiff's state law claims because such claims are related to Plaintiff's federal claims, as all claims arise out of a common nucleus of operative facts.

4.      Venue is proper in this Central District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because a substantial portion of the acts, events and/or omissions giving rise to the claims alleged herein occurred in this District, and the Properties that are the subject of this action are located within this District.

## THE PARTIES

5.      Plaintiff ELIZABETH ROSEN was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

6.      Defendant DAVID DUEL was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

7.      Defendant REBECCA DUEL was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

8.      Defendant ILANA YAMTOOBIAN was, at all times relevant to this

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Complaint, an individual residing in the County of Los Angeles, State of California.

9.  Defendant TERRY POLESIE was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

10.  Defendant KATHY COOK was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

11.  Defendant RAFFI SHIRINIAN was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

12.  Defendant JENNIFER GETZ was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

13.  Defendant DAVID NOURAFSHAN was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

14.  Defendant, URBAN BLOX, LLC is a Delaware limited liability company with its principal place of business located in the County of Los Angeles, State of California.

15.  Defendant, URBAN BLOX CRIMINAL ENTERPRISE is a criminal enterprise and a business entity of form unknown, conducting business in the County of Los Angeles, State of California.

16.  Defendant SURF REALTY CORPORATION is a Corporation with its principal place of business located in Los Angeles County, State of California.

17.  Defendant R & LS INVESTMENTS, INC., is a Corporation with its principal place of business located in Los Angeles County.

18.  Defendant KIMBERLY ROBERTS STEPP, was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

19.  Defendant STEPP COMMERCIAL is a business entity of form unknown conducting business in Los Angeles County, State of California.

20.  Defendant THORNTON PROPERTY ONE LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

21.     Defendant RIF INVESTMENTS-2 LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

22.     Defendant CENTRAL REALTY ADVISORS, INC. is a Corporation with its principal place of business located in Los Angeles County, State of California.

23.     Defendant URBAN DEVELOPER LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

24.     Defendant S BONITA ONE, LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

25.     Defendant 351 SB TWO LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

26.     Defendant IY EK PARTNERS, LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

27.     Defendant 27 OZONE, LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

28.     Defendant NOURAFSHAN VENICE PROPERTIES, LLC is a limited liability company with its principal place of business located in Los Angeles County, State of California.

29.     Defendant FORWARD MANAGEMENT LONG BEACH, INC. is a Corporation with its principal place of business located in Los Angeles County, State of California.

30.     Defendant JOSEPH MISKABI was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

31.     Defendant LAW OFFICES OF JOSEPH MISKABI, A PROFESSIONAL CORPORATION is a Professional Corporation with its principal place of business located in Los Angeles County, State of California.

32.     Defendant RICHARD DAGGENHURST was, at all times relevant to this Complaint, an individual residing in the County of Los Angeles, State of California.

33.     Defendant FELMAN, DAGGENHURST & EL DABE is a General

Partnership with its principal place of business located in Los Angeles County, State of California.

34.    Defendant DAGGENHURST LAW PC is a Professional Corporation with its principal place of business located in Los Angeles County, State of California.

35.    On information and belief, Defendants are and were, at all times pertinent to this Complaint, the owners, lessors, managers, and/or controllers of, and/or in the business of owning, renting, controlling, possessing, leasing, managing, and/or maintaining the Property and/or the Premises that are the subjects of this lawsuit and described in more detail herein.

36.    The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sue said Defendants by fictitious names. When the true names and capacities of the Defendants are known, Plaintiff will seek leave to amend this Complaint. Plaintiff is informed and believes and thereon alleges that such Defendants, and each of them, took some part in the acts and omissions alleged herein, and, as a direct and proximate result thereof, have incurred liability to Plaintiff for the relief prayed for herein. Each non-specific reference in this Complaint to "Defendant" or "Defendants" also refers to all Defendants sued under such fictitious names.

37.    At all times herein mentioned, each Defendant, including all Defendants sued under fictitious names, was the agent and employee of the remaining Defendants, and in doing the things hereinafter mentioned, each Defendant was acting within the course and scope of such agency and employment, with the knowledge, consent and permission of each other Defendant, and as authorized and/or ratified by each of the remaining Defendants.

38.    To the extent a Defendant is a distinct legal entity, it is believed that any such Defendant's officers, directors, principals, and/or partners ratified and approved any wrongful conduct alleged in this Complaint, or were directly responsible for perpetrating such conduct.

39.    At all times hereinafter mentioned, Plaintiff will show, according to proof,

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

that Defendants were, and remain, the alter egos, successors, and/or successors in interest, of the remaining Defendants.

40.     As to "alter ego liability" DEFENDANTS, it is alleged, upon information and belief, that as to those DEFENDANTS, that at all times there existed such a unity of interest and ownership among those DEFENDANTS such that any separateness ceased to exist that one was a mere shell or instrumentality through which the other carried out their business and that each DEFENDANT exercised such complete control over the other and so dominated it to achieve individual goals and so ignored business formalities that any separateness was merely a fiction, and did not in fact exist, and should be deemed not to exist, and as such, if acts are alleged as against one DEFENDANT in this complaint, it is alleged that that DEFENDANT acted for itself as well as on behalf of its alter egos. Among other things, those DEFENDANTS did one or more of the following acts supporting its alter ego liability: (1) commingled corporate funds; (2) failed to observe corporate formalities including maintaining minutes and failure to contribute sufficient capital; (3) commingled funds or other assets; (4) used corporate funds for something other than corporate uses; (5) failed to maintain adequate corporate records; (6) deliberately confused the records of the separate entities; (7) had the same directors and officers of the two or more corporations; (8) used the same office or business location; (9) utilized the same employees and/or attorney; (10) failed to adequately capitalize the corporation; (11) used the corporation as a mere shell, instrumentality or conduit for a single venture; (12) failed to maintain an arm's length relationship among related entities; and/or (13) used a corporate entity to procure labor, services or merchandise for another entity.  Moreover, injustice would result but for the finding of alter ego liability as to these DEFENDANTS, and as such this Court should pierce the corporate veil.  Further, since alter ego applies here, a corporation's shareholders are treated as "partners" and are held jointly and severally liable for its debts and ownership of one share is sufficient to impose alter ego liability, and it is thus alleged, upon information and belief, that various DEFENDANTS as alter egos, are also active shareholders in the remaining DEFENDANTS, influenced

and governed the remaining corporate DEFENDANTS and as such can, and should, be held liable as an alter ego of each and every remaining DEFENDANT.

41.    Whenever and wherever reference is made in this Complaint to any act or failure to act by Defendants, or any of them, such allegations and references shall also be deemed to mean the acts and failures to act of each defendant, whether acting individually, or jointly and severally.

42.    Whenever and wherever reference is made to individuals who are not named as plaintiffs or defendants in this Complaint, but who are or were employees or agents of Defendants, or each of them, Plaintiff asserts that the conduct of such individuals at all pertinent times was on behalf of Defendants, and each of them, and was within the course and scope of their employment or agency.

43.    Whenever reference is made to any act or omission of a particular Defendant, such allegation shall be deemed to mean that such conduct was done with the express knowledge, authorization and ratification of the Urban Blox criminal enterprise.

## FACTUAL ALLEGATIONS

44.    This action concerns the residential real property known as 438 N. Vista Street, Los Angeles, CA 90036 (the "Property"), which has a legal description of LOT 180, TRACT 6658, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 72 PAGES 32 AND 33 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

45.    The "Property" was, at all relevant times, a four-unit apartment complex located in Los Angeles, California.

46.    At all relevant times herein, Plaintiff resided in the Unit identified as 440 N. Vista Street (hereinafter "Plaintiff's Unit").

47.    At all relevant times herein, the Property and Plaintiff's Unit were subject to the Los Angeles Rent Stabilization Ordinance codified by Los Angeles Municipal Code ("LAMC") sections 151.01, et seq., which, among other things, sets limits on the annual

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

maximum cap for rent increases and provides tenants protections from evictions without "just cause."

48.    In enacting the Los Angeles Rent Stabilization Ordinance, the Los Angeles City Council declared as follows:

> There is a shortage of decent, safe and sanitary housing in the City of Los Angeles resulting in a critically low vacancy factor. Tenants displaced as a result of their inability to pay increased rents must relocate but as a result of such housing shortage are unable to find decent, safe and sanitary housing at affordable rent levels. Aware of the difficulty in finding decent housing, some tenants attempt to pay requested rent increases, but as a consequence must expend less on other necessities of life. This situation has had a detrimental effect on substantial numbers of renters in the City, especially creating hardships on senior citizens, persons on fixed incomes and low and moderate income households. This problem reached crisis level in the summer of 1978 following the passage of Proposition 13.

49.    At all relevant times herein, the Property and Plaintiff's Unit were owned, operated, controlled and managed by the Urban Blox criminal enterprise.

50.    The Urban Blox criminal enterprise describes itself as "a privately held real estate investment and development firm, operating primarily as a family office [that has] acquired over 100 assets with a focus on well located multifamily and creative commercial properties." In reality, the Urban Blox criminal enterprise was formed to acquire several rent-controlled properties (collectively "the Urban Blox Properties"), including, but not limited to, 438 N. Vista Street, Los Angeles, CA ("438 N. Vista"); 49 Thorton Ave., Los Angeles, CA ("49 Thornton"); and 351 N. Sierra Bonita Ave., Los Angeles, CA  ("351 N. Sierra Bonita"), with the common purpose of removing "rent-controlled" tenants and raising the rents to market rates, in order to unjustly enrich the Defendants at the expense of disabled, low-income, elderly, and long-term rent-controlled tenants. The criminal and fraudulent conduct described herein was also carried out in a similar fashion on almost every tenant and virtually every property acquired by the Urban Blox criminal enterprise.

51.    Defendants took actions or engaged in omissions which tolled any statute of limitation period and which are sufficient to justify equitable estoppel and/or delayed discovery. Defendants' fraudulent acts and/or omissions described herein, including but

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

not limited to, misrepresenting and/or concealing their true identities and the purpose and nature of their scheme, prevented Plaintiff from discovering her causes of action against Defendants. Plaintiff reasonably relied upon Defendants' fraudulent representations and concealments to her detriment, and could not have, through exercise of reasonable diligence, discovered the existence of her claims sooner.

### *Lucas Cyril Plouviez*

52.     In or around April of 2012, Mr. Plouviez signed a residential lease agreement and moved into Unit 2 of Property located at 49 Thorton Avenue. At the time, the entire Property was owned by Defendant Surf Realty Corporation.

53.     At all relevant times, Mr. Plouviez was disabled as defined by California Civil Code § 1761 in that Plaintiff was suffering from a physical or mental impairment – Post-Traumatic Stress Disorder. At all relevant times, Defendants knew or should have known that their unlawful conduct, as described herein, was directed at a disabled individual.

54.     Mr. Plouviez resided at the Property without incident until Defendant Surf Realty agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise – with all 5 of its units vacant.

55.     On May 22, 2019, as a necessary initial step to Defendants' common business plan and scheme, Mr. Plouviez received a voicemail from Defendant Terry Polesie notifying Mr. Plouviez that Defendant Surf Realty Corporation has agreed to sell 49 Thorton vacant, and that Mr. Plouviez must vacate his rent-controlled unit immediately. Over the following week, Mr. Plouviez received several more phone calls from Mr. Polesie notifying him that he must vacate his Unit.

56.     Having refused to voluntarily vacate his Unit, Mr. Plouviez was contacted by telephone the following week by Defendant Ilana Yamtoobian, who fraudulently held herself out as an "independent mediator" attempting to help Mr. Plouviez negotiate a buyout which she fraudulently represented would be of tremendous financial benefit to Mr. Plouviez.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

57.    Between May of 2019 and March of 2020, Mr. Plouviez was repeatedly harassed and threatened via telephone, text message and mail by various Defendants, including Defendants Ilana Yamtoobian and David Duel, demanding that he vacate his Unit. During this time, Mr. Plouviez was also confronted by Defendant Ilana Yamtoobian, who intentionally confined Mr. Plouviez inside his Unit without his consent while she levied various threats against Mr. Plouviez if he refused to voluntarily vacate his Unit.

58.    Between May of 2019 and March of 2020, Mr. Plouviez was repeatedly subject to unannounced entries into Unit 2 by Defendants that were not related to necessary repairs or services, as well as relentless and continuous incomplete and unlawful postings of notices to enter his Unit.

59.    Concurrently with this harassment, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in June of 2019, Defendants stopped accepting Mr. Plouviez's rent checks in order to manufacture a pretextual lease violation.

60.    Further concurrent with this harassment, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in June of 2019, Defendants ceased making necessary repairs to Unit 2 and ignored Mr. Plouviez's requests for repairs.

61.    On October 4, 2019, Defendants filed an unlimited civil action in the Los Angeles Superior Court in the name of "Surf Realty Corp." against Mr. Plouviez, alleging, amongst other things, that Mr. Plouviez did not have a right to possession of his Unit.

62.    On or about October 23, 2019, the Property was purportedly sold to Defendants Thornton Property One, LLC and RIF Investment 2, LLC as tenants in common.

63.    On December 5, 2019, Defendants filed an unlawful detainer action in the Los Angeles Superior Court in the name of "Rebecca Duel dba Surf Realty Corp." fraudulently alleging that Mr. Plouviez had failed to pay rent for the subject Unit 2. At the time this unlawful detainer action was filed, Defendants knew that Mr. Plouviez had been

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

dutifully and timely paying his rent, and that Defendants intentionally failed and/or refused to accept Mr. Plouviez's rent in order to manufacture a pretextual lease violation. This action was dismissed due to improper service.

64.     In or around March of 2020, Mr. Plouviez's Unit sustained significant water damage, which caused dangerous toxic mold to grow, rendering Unit 2 substandard and untenable.

65.     On March 17, 2020, Mr. Plouviez notified Defendants of the untenable conditions in Unit 2, requested that Defendants conduct necessary repairs, and requested that he be provided temporary accommodations for his disability so that he may have a safe and habitable dwelling.

66.     Defendants refused to remediate the water damage and refused to provide temporary accommodations. Unable to remain in his Unit due to the dangerous and uninhabitable conditions, Mr. Plouviez was forced to temporarily relocate.

67.     On March 21, 2020, in response to Mr. Plouviez's request for legally mandated temporary accommodations, Defendant Yamtoobian accused Mr. Plouviez of "sexually assault[ing]" her and called him a "sexual harasser of epic proportions."   On March 22, 2020, again in response to Mr. Plouviez's request for legally mandated temporary accommodations, Defendant Yamtoobian called Mr. Plouviez a "piece of shit sexual harasser" and threatened Mr. Plouviez's counsel, by electronic mail, that he "will pay dearly for this." On March 23, 2020, again in response to Mr. Plouviez's request for legally mandated temporary accommodations, Defendant Yamtoobian, via electronic mail, accused Mr. Plouviez of "sexually abus[ing]" her and accused Mr. Plouviez's counsel of being an "accessory to intimidation by a man who sexually abused me." Defendant Yamtoobian further threatened to file a sexual harassment complaint against Mr. Plouviez and his counsel; threatened to "file a well crafted ABA complaint and will go to very far lengths to ensure a stain is on your record;" and to share her "emotionally distressing intimidation" on "woman's forums to ensure that when anyone searches [Mr. Plouviez's counsel] they come to see the type of horrific person you are." Finally,

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Defendant Yamtoobian threatened Mr. Plouviez's counsel by stating "I will tear you down in ways that will be a permanent stain"; "Hell hath no fury like a scorned woman. Especially a pregnant Jewish one. This is PERSONAL for me, not business."

68.   On or about March 23, 2020, Defendants filed another unlawful detainer action in the Los Angeles Superior Court in the name of "RIF Investments-2, LLC" fraudulently alleging that Mr. Plouviez had failed to pay rent for the subject Unit. At the time this unlawful detainer action was filed, Defendants knew that Mr. Plouviez had been dutifully and timely paying his rent, and that Defendants intentionally failed and/or refused to accept Mr. Plouviez's rent in order to manufacture a pretextual lease violation. Defendants were further aware at the time this unlawful detainer action was filed that Unit 2 was in substandard and untenable condition.

69.   On or about April 16, 2020, Mr. Plouviez attempted to return to Unit 2 and learned that Defendants had changed the locks to Unit 2, divesting him of possession of his unit. Mr. Plouviez further learned at this time that Defendants had converted and/or disposed of all of his personal property and belongings, including his passport. Mr. Plouviez was not provided notice of the change of locks nor was he provided access to the newly installed electronic deadbolt.

70.   In November of 2020, Defendants purportedly served Mr. Plouviez via posting and United States Mail, service of the summons and complaint for unlawful detainer action, at Unit 2 of the Property. Defendants were aware at the time of this purported service that Mr. Plouviez had been locked out of Unit 2 since April of 2020, yet fraudulently represented to the Court, under penalty of perjury, that service had been effected on Mr. Plouviez at Unit 2. Defendants further purported to have served Mr. Plouviez with Requests for Admissions at Unit 2, again fraudulently representing to the Court, under penalty of perjury, that service had been effected on Mr. Plouviez at Unit 2. Thereafter, Defendants filed a Motion to Deem the subject Requests for Admissions Admitted, wherein Defendants again fraudulently represented to the Court, under penalty of perjury, that service had been effected on Mr. Plouviez at Unit 2. On November 13,

2020, Defendants filed a Motion for Summary Judgment, which was supported by Defendants' fraudulently obtained Order deeming requests for admissions admitted, and wherein Defendants again fraudulently represented to the Court, under penalty of perjury, that service had been effected on Mr. Plouviez at Unit 2. On November 30, 2020, Defendants filed an ex parte application to advance the hearing date on its motion for summary judgment. The application was supported by the declaration of Defendant Ilana Yamtoobian, in which she fraudulently declared, under penalty of perjury, that ex parte relief is necessary because Mr. Plouviez was sexually harassing her by "repeatedly making inappropriate and profane comments to me" and it is "interfering with [her] ability to manage and maintain the property." Defendants, including Defendant Yamtoobian, were aware at the time of submitting this ex parte application and supporting declaration that Mr. Plouviez had been locked out of Unit 2 since April of 2020 and was not interfering with Defendant Yamtoobian's ability to manage or maintain the property. As a result of Defendants' fraudulent conduct, they were able to obtain an order from the Los Angeles Superior Court granting Summary Judgment in favor of RIF Investments-2, LLC and against Mr. Plouviez.

### *Gessica Smith*

71.    In or around February of 2016, Ms. Smith signed a residential lease agreement with Defendant Surf Realty Corporation and moved into Unit 1 of Property located at 49 Thorton Avenue. At the time, the entire Property was owned by Defendant Surf Realty Corporation.

72.    Ms. Smith resided at the Property without incident until Defendant Surf Realty agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise – with all 5 of its units vacant.

73.    In or around August of 2019, as a necessary initial step to Defendants' common business plan and scheme, Ms. Smith received several telephone calls from Defendant Polesie notifying her that 49 Thorton will be sold, and that Ms. Smith must vacate her rent-controlled Unit immediately.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

74.     On or about October 23, 2019, the Property was sold to Defendants Thornton Property One, LLC and RIF Investment 2, LLC as tenants in common.

75.     Having refused to voluntarily vacate her Unit and beginning in or around November of 2019, Ms. Smith began receiving relentless harassment and threats from Defendant Rebecca Duel, via telephone and mail, demanding that she vacate her Unit.

76.     On or about November of 2019, Ms. Smith was contacted via telephone by Defendant Ilana Yamtoobian, who fraudulently held herself out as an "independent mediator" attempting to help Ms. Smith negotiate a buyout, which she fraudulently represented would be of tremendous financial benefit to Ms. Smith. Defendant Ilana Yamtoobian stated that the owners of the Property would be willing to offer Ms. Smith a buyout of $10,000.00 as well as assistance in finding a different apartment.

77.     Between October of 2019 and January of 2020, Ms. Smith was repeatedly subject to unannounced entries into her Unit by Defendants that were not related to necessary repairs or services, as well as relentless and continuous incomplete and unlawful postings of notices to enter her Unit.

78.     Concurrent with the harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in or around November of 2019, Defendants refused to cash Ms. Smith's rent checks in order to manufacture a pretextual lease violation.

79.     Further concurrent with the harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in or around November of 2019, Defendants refused to make any necessary repairs to the Property and ignored Ms. Smith's requests for repairs.

80.     Further concurrent with the harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, and in an effort to manufacture pretextual lease violations, Defendants served Ms. Smith with a "3-day Notice to Cure Violation or Move Out" fraudulently alleging that Ms. Smith had refused to provide her Landlord with a key to a locked gate that prevented the Landlord from entry

access.

81.     On November 22, 2019, Ms. Smith contacted Defendant Terry Polesie by telephone to inquire why her rent check for the month of November had not been cashed. Defendant Terry Polesie notified Ms. Smith that she would need to address this issue with Defendant Rebecca Duel.

82.     On November 22, 2019, Ms. Smith contacted Defendant Rebecca Duel by telephone to inquire why her rent check for the month of November had not been cashed. Defendant Rebecca Duel notified Ms. Smith that Defendant David Duel would be contacting her shortly.

83.     Shortly thereafter, on November 22, 2019, Ms. Smith was contacted via telephone by Defendant David Duel, who threatened that he would "make her life very difficult" if she did not accept a $10,000 buyout offer. Defendant David Duel further threatened that he would take away Ms. Smith's parking spot; have Ms. Smith's car towed; and remove the front yard fence to allow homeless people to sleep on Ms. Smith's porch if she did not accept the buyout offer.

84.     Thereafter, in December of 2020, in concurrence with Defendants' harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, Defendants attempted to force Ms. Smith to abandon her unit by turning off her water heater and gas and removing her assigned parking space.

85.     On or about December 4, 2019, Defendants filed an unlawful detainer action in the Los Angeles Superior Court in the name of "Rebecca Duel dba Surf Realty Corp." fraudulently alleging that Ms. Smith had failed to pay rent for her subject unit. At the time this unlawful detainer action was filed, Defendants knew that Ms. Smith had been dutifully and timely paying her rent, and that Defendants intentionally failed and/or refused to accept Mr. Smith's rent.

86.     That same day, December 4, 2019, Defendants fraudulently declared under penalty of perjury to have served Ms. Smith with the unlawful detainer complaint and summons by personal service at her Unit. However, at the time of the alleged service, Ms.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Smith was out of town and never received such service.

87.    On December 13, 2019, Defendants fraudulently filed a request for Entry of Default in the unlawful detainer action. At the time this Request for Entry of Default was filed, Defendants knew that they had not served the unlawful detainer complaint and summons upon Ms. Smith.

88.    On or about January 24, 2020, Defendants posted an eviction notice on Ms. Smith's Unit, ordering her to vacate the Unit by February 4, 2021.

89.    On February 4, 2021, Ms. Smith – in reliance on Defendants fraudulently obtained eviction notice and in fear of further harassment, threats, legal action and undue expense – vacated the Unit.

### *Claire Campolo*

90.    In or around December of 2017, Ms. Campolo signed a residential lease agreement with Defendant Surf Realty Corporation and moved into Unit 3 of Property located at 49 Thorton Avenue. At the time, the entire Property was owned by Defendant Surf Realty Corporation.

91.    Ms. Campolo resided at the Property without incident until Defendant Surf Realty agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise – with all 5 of its units vacant.

92.    In or around January of 2019, Ms. Campolo's Unit had sustained significant water damage due to repeated plumbing leaks and water intrusion issues, which caused dangerous toxic mold to grow, rendering the Unit substandard and untenable. Ms. Campolo requested from Defendants that she be provided temporary accommodations for her disability so that he may have a safe and habitable dwelling. Defendants refused to remediate the water damage and refused to provide temporary accommodations.

93.    In or around May of 2019, as a necessary initial step to Defendants' common business plan and scheme, Ms. Campolo received several telephone calls from Defendant Polesie notifying her that 49 Thorton will be sold, and that Ms. Campolo must vacate her rent-controlled Unit immediately.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

94.     Beginning in May of 2019, Mr. Campolo was repeatedly subject to unannounced entries into her Unit that were not related to necessary repairs or services, as well as relentless and continuous incomplete and unlawful postings of notices to enter her Unit.

95.     Having refused to voluntarily vacate her Unit and beginning in or around May of 2019, Ms. Campolo began receiving relentless harassment and threats from representatives of the putative owners of the Property, including Defendants Ilana Yamtoobian and David Duel, via telephone and mail, fraudulently misrepresenting that Ms. Campolo was required by law to vacate her unit and demanding that she vacate her unit immediately.

96.     In or around May of 2019, Ms. Campolo was contacted by Defendant Ilana Yamtoobian, who fraudulently held herself out as an "independent mediator" attempting to help Ms. Campolo negotiate a buyout which she fraudulently represented would be of tremendous financial benefit to Ms. Campolo.

97.     As a result of the persistent harassment and intense pressure applied by Defendants, including Defendants Yamtoobian, David Duel and Terry Polesie; Defendants' refusal to make repairs to the untenable conditions in her Unit; and Defendants' fraudulent misrepresentation that Ms. Campolo was required to vacate her Unit due to the anticipated sale of the Property, Ms. Campolo involuntarily relinquished possession of Unit 3 on June 4, 2019.

98.     Unbeknownst to Ms. Campolo, Defendants filed an unlawful detainer action against Ms. Campolo in the Los Angeles Superior Court, which Ms. Campolo only learned of upon submitting an application for a new rental property following her wrongful eviction from Unit 3.

### *Annie Morrisette*

99.     In or around October of 2017, Ms. Morrisette signed a residential lease agreement with Defendant Surf Realty Corporation and moved into Unit 5 of Property located at 49 Thorton Avenue. At the time, the entire Property was owned by Defendant

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Surf Realty Corporation.

100. At all relevant times, Ms. Morrissette was disabled as defined by California Civil Code § 1761. At all relevant times, Defendants knew or should have known that their unlawful conduct, as described herein, was directed at a disabled individual.

101. Ms. Morrisette resided at the Property without incident until Defendant Surf Realty agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise – with all 5 of its units vacant.

102. In or around March of 2019, Ms. Morrisette's roommate, Verna Smith, passed away. Within of week of Ms. Smith's passing, Ms. Morrisette received a call from Defendant Terry Polesie notifying her that she had one week to vacate her unit or she would be forcefully removed.

103. As a result of this phone call, Ms. Morrisette suffered a heart attack and was required to be hospitalized. During the course of Ms. Morrisette's convalescence, she received another call from an unidentified representative of the putative owners of the Property and a member of the Urban Blox criminal enterprise, notifying her that if she did not voluntary vacate her unit, she would be sued for a lot of money. Ms. Morrisette responded that she could not move out of the Unit as she was presently recovering from a heart attack.

104. The following day, Ms. Morrisette received another phone call from an unidentified representative of the putative owners of the Property, notifying her that all her possessions would be removed from her unit and the locks would be changed if she did not voluntarily move out of her unit.

105. Upon Ms. Morrisette's discharge from in-patient medical care following her heart attack, she found that Defendants had unlawfully entered her unit, removed, discarded and/or converted all of her possessions, and changed the front door locks.

106. In June of 2019, Defendants purportedly filed an unlawful detainer action against Ms. Morrisette in the Los Angeles Superior Court. Thereafter, Defendants fraudulently represented to the Court that they served Ms. Morrisette with Requests for

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Admissions by UPS Next Day Mail at Unit 5, despite knowledge that they had already divested Ms. Morrisette of possession of Unit 5 and changed the locks. Thereafter, on August 21, 2019, Defendants filed a Motion to Deem the subject Requests for Admissions Admitted, which Defendants again fraudulently represented was served upon Ms. Morrisette by UPS Next Day Mail at Unit 5.

107.    In August of 2019, Ms. Morrisette received a phone call from Defendant David Duel in which Mr. Duel threatened that they would continue with litigation and obtain a default judgment against Ms. Morrisette unless she agreed to give up possession of Unit 5.

108.    In reliance on Defendants' fraudulent misrepresentations and in fear of further harassment, threats, legal action and undue expense – Ms. Morrisette agreed to relinquish possession of Unit 5.

### ELIZABETH (LISA) ROSEN

109.    In or around June of 2007, Ms. Rosen signed a residential sublease agreement with Pamela Brannon and moved into the real property that is located at 440 N. Vista Street, Los Angeles, CA. (the "440 N. Vista"). At the time, the subject real property was owned by Anthony Raul Campa and Oliva Campa Gonzalez.

110.    At all relevant times, Ms. Rosen was disabled as defined by California Civil Code § 1761. At all relevant times, Defendants knew or should have known that their unlawful conduct, as described herein, was directed at a disabled individual.

111.    Ms. Rosen resided at the Property without incident until the owners agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise.

112.    On May 9, 2018, the subject real property was purchased by Defendant Ilana Yamtoobian and Rebecca Duel as tenants in common. On June 14, 2018, the subject real property was transferred to Defendant Urban Developer, LLC. On May 8, 2019, the property was again transferred back to Ilana Yamtoobian and Rebecca Duel.

113.    On July 9, 2018, as a necessary initial step to Defendants' common business plan and scheme, Defendant Ilana Yamtoobian introduced herself to Ms. Rosen and

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

fraudulently held herself out as an "independent mediator." Defendant Yamtoobian offered Ms. Rosen an initial buyout deal, which she fraudulently represented would be of tremendous benefit to Ms. Rosen, and which Ms. Rosen refused. Specifically, Defendant Yamtoobian represented that she was on Ms. Rosen's side and offered her $10,000 if she agreed to vacate her unit within three months. Thereafter, Defendant Yamtoobian continued to bombard Ms. Rosen with harassing phone calls and text messages, in which Defendant Yamtoobian continued her attempts to intimidate Ms. Rosen into accepting a buyout deal.

114. Between July of 2018 and November of 2018, Ms. Rosen was repeatedly harassed and threatened via telephone and mail by various Defendants, including Defendant Yamtoobian, Defendant David Duel, and Defendant Jennifer Getz, who demanded that she vacate her Unit.

115. Between July of 2018 and November of 2018, Ms. Rosen was repeatedly subject to unannounced entries to the Property as well as relentless and continuous incomplete and unlawful postings of notices to enter her Unit. On September 14, 2018, Ms. Rosen received a 24-Hour Notice to Enter Dwelling from "Urban Developer LLC" that listed no reason for entry and provided no description of the work to be performed.

116. Concurrently with this harassment, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in or around August of 2018, Defendants began refusing to cash Ms. Rosen's rent checks in order to create a pretextual lease violation.

117. Concurrently with this harassment, on August 14, 2018, Defendants notified Ms. Rosen of a change in terms of her tenancy, raising her monthly rent.

118. On September 13, 2018, Ms. Rosen received correspondence from Defendant Joseph Miskabi, purporting to represent the legal interests of Defendant Urban Developer, LLC. This correspondence included threats to sue Ms. Rosen and an attached draft lawsuit alleging $462,000.00 in damages against Ms. Rosen. Specifically, Defendant Joseph Miskabi threatened that "if this matter is not resolved via written and signed agreement on

SCHIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

or before October 8, 2018, my office will thereafter file the Complaint and aggressively prosecute the same. Should my client file the attached Complaint, not only will you be liable for its damages, but you will also be responsible for its attorney's fees and Court costs as well."

119.    On or about October 2, 2018, Ms. Rosen began receiving communications from Defendant Jennifer Getz. Defendant Getz held herself out to Ms. Rosen as an "intermediary" working on behalf of Defendant David Duel.  Defendant Getz informed Ms. Rosen that she had been evicted by and involved in a lawsuit with Defendant David Duel and his partner, Defendant Raffi Shirinian.  Defendant Getz further informed Ms. Rosen that the owners of the Property were extremely litigious and Ms. Rosen "did not stand a chance against them."  Defendant Getz proceeded to repeatedly harass Ms. Rosen via phone calls and text messages, in which she insisted that Ms. Rosen accept Defendants' buyout offer and vacate her unit.

120.    Shortly thereafter, Defendant David Duel contacted Ms. Rosen by telephone and introduced himself to her as "the good cop."  Defendant Duel met with Ms. Rosen in person, at which time he made further attempts to persuade Ms. Rosen to accept a buyout deal, fraudulently representing that it would be of tremendous benefit to Ms. Rosen, and further fraudulently representing that he was trying to protect Ms. Rosen from Defendant Miskabi's lawsuit.

121.    As a result of the persistent harassment and intense pressure applied by Defendants, including Defendant Yamtoobian, Defendant David Duel, Defendant Miskabi, and Defendant Getz, fear of further harassment, threats, legal action and undue expense, as well as multiple material and fraudulent misrepresentations, Ms. Rosen signed a "Cash For Keys" agreement on November 13, 2018, agreeing to vacate her unit by June 1, 2019. Unbeknownst to Ms. Rosen, Defendants "Cash for Keys" agreement failed to comply with numerous statutory requirements under the Los Angeles Municipal Code, including various disclosure requirements.

122.    After Ms. Rosen signed the "Cash For Keys" agreement, Defendants refused

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

to respond to multiple habitability issues in Ms. Rosen's Unit, including significant water damage that occurred in January of 2019, causing dangerous toxic mold to grow throughout Ms. Rosen's Unit, rendering her Unit unsafe and untenable. Despite the dangerous and untenable conditions in Ms. Rosen's unit, Defendants refused to make necessary repairs.

123.   On September 2, 2019, Ms. Rosen received harassing and threatening text messages from Defendant Yamtoobian, accusing her of improperly disclosing the terms of her "Cash for Keys" agreement to co-tenant Adam Silver.

124.   Defendants fraudulently misreported the "Cash For Keys" agreement amount to the IRS, causing Ms. Rosen to incur expenses with an accountant to rectify.

### *Adam Silver*

125.   In or around September of 2013, Mr. Adam Silver ("Mr. Silver") signed a residential lease agreement and moved into the real property that is located at 438 N. Vista Street, Los Angeles, CA. At the time, the subject real property was owned by Anthony Raul Campa and Oliva Campa Gonzalez.

126.   Mr. Silver resided at the Property without incident until the owners agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise.

127.   On May 9, 2018, the subject real property was purchased by Defendant Ilana Yamtoobian and Rebecca Duel as tenants in common. On June 14, 2018, the subject real property was transferred to Defendant Urban Developer, LLC. On May 8, 2019, the property was again transferred back to Ilana Yamtoobian and Rebecca Duel.

128.   Shortly after the change of ownership and starting in or round June of 2018, and as a necessary and intentional part of Defendants' common business plan and scheme, Mr. Silver became subject to multiple unannounced entries into his Unit by Defendants that were not related to necessary repairs or services, as well as relentless and continuous incomplete and unlawful postings of notices to enter his Unit.

129.   On June 25, 2018, and as a necessary and intentional part of Defendants' common business plan and scheme, Mr. Silver received a questionnaire with a cover letter

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

from Defendants' purported counsel, notifying Mr. Silver that "my client, Urban Developer, LLC is the new owner of the above reference premises. My client is preparing to begin redevelopment of this parcel. My client will need to obtain possession of the premises and will make relocation payment obligations in accordance with the Los Angeles Rent Stabilization regulations." The purpose of this questionnaire was to identify the most susceptible targets to Defendants' scheme.

130.    On March 7, 20219, Mr. Silver was offered his first cash buyout in the amount of $10,750 by Defendant Rebecca Duel. Ms. Duel represented that this amount is what Mr. Silver is entitled to pursuant to City guidelines, and fraudulently represented that this cash buyout would be of tremendous financial benefit to Mr. Silver.

131.    Beginning in or around May of 2019, and as a necessary and intentional part of Defendants' common business plan and scheme, Mr. Silver began receiving relentless harassment and threats from Defendants Ilana Yamtoobian and David Duel, via telephone and electronic mail, demanding that he vacate his Unit.

132.    Concurrent with the harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, and beginning in or around May of 2019, Defendants refused to respond to multiple habitability issues in Mr. Silver's unit and ignored Mr. Silver's repair requests.

133.    Concurrent with the harassment and threats, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in or around May of 2019, Defendants refused to cash Mr. Silver's rent checks until he agreed to make a plan to move out in order to manufacture a pretextual lease violation.

134.    In August of 2019, Mr. Silver had to travel abroad for work. When he returned to his unit in September of 2019, he discovered that Defendants had entered his unit without providing notice and without obtaining his permission, cut his internet and phone lines, and turned off his gas and water heater.

135.    Furthermore, upon his return in September of 2019, Mr. Silver was subjected to more relentless harassment from Defendant Yamtoobian, who offered Mr. Silver a new

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

cash buyout amount of $15,000 and fraudulently represented that this cash buyout would be of tremendous financial benefit to Mr. Silver. Defendant Yamtoobian further threatened that she would "make his life very difficult" if he did not accept the buyout.

136.   Following Mr. Silver's rejection of the cash buyout, Defendant David Duel intervened on September 20, 2019, referring to himself as the "good cop" and purporting to involve himself in order to save Mr. Silver from further harassment from Defendant Yamtoobian and Defendant Rebecca Duel.   Defendant David Duel further fraudulently represented that the offered buyout amount of $15,000 would be of tremendous financial benefit to Ms. Silver, and that he would be missing out by not taking the offer "and getting a fat pay day."

137.   On October 2, 2019, Mr. Silver received a third cash buyout offer from Defendant Duel in the amount of $27,500.00. As a result of the persistent harassment and intense pressure applied by Defendants, including Defendant Yamtoobian and Defendants Rebecca and David Duel as well as multiple material and fraudulent misrepresentations, including the representation that this buyout would be of tremendous financial benefit to Mr. Silver, Mr. Silver signed a "Cash For Keys" agreement on October 2, 2019, agreeing to vacate his Unit by November 1, 2019.

138.   Once Mr. Silver signed the "Cash For Keys" agreement, Defendants ceased all communications with Mr. Silver and refused to sign the "Cash For Keys" agreement. Defendants further continued to refuse to accept Mr. Silver's rent checks which he continued to timely submit.

139.   On December 10, 2019, Mr. Silver received a copy of an unlawful detainer action and summons that was filed in the Los Angeles Superior Court which stated that Mr. Silver had not paid required rent. At the time this unlawful detainer action was filed, Defendants were aware that Mr. Silver had been dutifully and timely paying his rent, and that Defendants intentionally failed and/or refused to accept Mr. Silver's rent in order to manufacture a pretextual lease violation. The unlawful detainer action was accompanied by a Three Day Notice to Pay Rent or Quit that Defendants fraudulently declared was

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

served upon Mr. Silver on October 4, 2019, when no such service was ever effectuated.

140.   Mr. Silver returned to his unit in January of 2020 following an extended work trip to find that the heat, gas and water had been shut off in the entire building and construction workers had been unlawfully entering his Unit without providing any notice.

141.   As a result of the persistent harassment and intense pressure applied by Defendants, including Defendants Ilana Yamtoobian and David Duel; Defendants' creation of conditions that made Mr. Silver's unit uninhabitable; and in fear of further harassment, threats, legal action and undue expense which would be caused by Defendants' fraudulent unlawful detainer action, Mr. Silver involuntarily surrendered possession of his unit to Defendants on February 4, 2020.

### *Julia Wolov*

142.   In or around February of 2008, Ms. Wolov signed a residential lease and moved into Unit 3 of Property located at 351 N. Sierra Bonita Avenue. At the time, the Property was owned by Edward Brill and Catherine Brill as Trustees of the Brill Family Trust.

143.   Ms. Wolov resided at the Property without incident until the Property was sold to a group of predatory investors – the Urban Blox criminal enterprise.

144.   On March 29, 2019, the subject real property was purchased by Defendants David Shadpour and S Bonita One, LLC as tenants in common.

145.   In April of 2019, Ms. Wolov was contacted via telephone by Defendant Ilana Yamtoobian, who fraudulently held herself out as an "independent mediator" attempting to help Ms. Wolov negotiate a buyout, which she fraudulently represented would be of tremendous financial benefit to Ms. Wolov. Defendant Ilana Yamtoobian stated that the owners of the Property would be willing to offer Ms. Wolov a monetary buyout and provide assistance in finding a different apartment. Over the next two months, Defendant Yamtoobian continued to harass Ms. Wolov with requests for her to accept a buyout.

146.   Further concurrent with this harassment, and as a necessary and intentional part of Defendants' common business plan and scheme, beginning in April of 2019,

SCHIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Defendants ceased making necessary repairs to the Property and ignored Ms. Wolov's requests for repairs.

147.    On July 29, 2019, in follow-up to Defendant Yamtoobian's repeated requests and threats to Ms. Wolov to vacate her unit, Defendant Yamtoobian sent Ms. Wolov, via electronic mail, a list of several apartments in the immediate vicinity to which she could move.

148.    On August 22, 2019, Defendant David Duel sent Ms. Wolov, via electronic mail, a list of the reasons why it is in her interest to surrender possession of her unit. The cited reasons were, among other things, "you will be living in a construction zone for the next 12 months; you do not have a parking spot and can get one; we will be raising rents 4% a year…; you will be paid $20,000, this is basically living one year rent free, take an insane vacation, do whatever the fuck you want for a couple months, I duno.. whatever floats your boat…; I am absolutely certain you can get a place that's equivalent with parking for $1750-1800."

149.    By January of 2020, Defendants' refusal to make repairs to Ms. Wolov's unit had caused several conditions to arise and/or worsen which rendered Ms. Wolov's unit untenable. On January 22, 2020, Ms. Wolov notified Defendant David Duel that her repair requests were being ignored and that, among other things, she did not have a functioning shower or toilet in her unit for the past week and she did not have a functioning carbon monoxide detector. In February of 2020, Ms. Wolov notified Defendants that there was an uncovered hole in her bathroom floor that led directly underground and significant termite infestations in her unit. Defendants refused to make the necessary repairs to Ms. Wolov's unit.

150.    In August of 2020, Ms. Wolov again reached out to Defendant Yamtoobian requesting that Defendants make necessary repairs to her unit. In response, Ms. Yamtoobian stated that she no longer works for the building. On August 27, 2020, Ms. Wolov reached out to Defendant David Duel, by electronic mail, to request that Defendants make necessary repairs to her unit. Defendant David Duel contacted Ms.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Wolov by telephone on August 31, 2020 and fraudulently represented to her that the building was being sold to new owners, and that the new owners would contact her about the repairs and where to send her rent checks. This misrepresentation was made to avoid making necessary habitability repairs and create a pretextual lease violation for nonpayment of rent.

151.   On September 8, 2020, the 351 N. Sierra Bonita was purportedly sold to 351 SB TWO LLC, which is owned and managed the Urban Blox criminal enterprise.

152.   As a result of the persistent harassment and intense pressure applied by Defendants; Defendants' refusal to make repairs to the untenable conditions in her Unit; and Defendants' fraudulent misrepresentation regarding the ownership status of the property, Ms. Wolov involuntarily relinquished possession of Unit 3 on March 25, 2021.

### John Doe 1

153.   John Doe 1 is believed to have lawfully resided at a unit of the North Vista Street property owned and operated by the Urban Blox criminal enterprise.

154.   John Doe 1 resided at the Property without incident until the owners agreed to sell the Property to a group of predatory investors – the Urban Blox criminal enterprise.

155.   On or about June 25, 2018, John Doe 1 received correspondence from Defendants notifying him that they are preparing redevelopment of the property and need to obtain possession of the premises. Defendants further provided a questionnaire which they represented was necessary to determine the appropriate amount of relocation payment obligations. The purpose of this questionnaire was to identify the most susceptible targets to Defendants' scheme.

156.   On May 9, 2018, the subject real property was purchased by Defendant Ilana Yamtoobian and Rebecca Duel as tenants in common. On June 14, 2018, the subject real property was transferred to Defendant Urban Developer, LLC. On May 8, 2019, the property was again transferred back to Ilana Yamtoobian and Rebecca Duel.

157.   Shortly after the change of ownership and starting in or round June of 2018, and as a necessary and intentional part of Defendants' common business plan and scheme,

John Doe 1 became subject to multiple unannounced entries into his Unit by Defendants that were not related to necessary repairs or services, as well as relentless and continuous incomplete and unlawful postings of notices to enter his Unit.

158.    Beginning in or around May of 2019, and as a necessary and intentional part of Defendants' common business plan and scheme, John Doe 1 began receiving relentless harassment and threats from Defendants Ilana Yamtoobian and David Duel, via telephone and mail, demanding that he vacate his Unit.

159.    In December of 2019, the cable lines, water, hot water heater and heat in John Doe's unit were shut off in an effort to coerce John Doe 1 to relinquish possession of his rent-controlled unit. On December 27, 2019, John Doe 1 informed Defendants that he would be filling out a violation form for lack of services and submitting it to HCIDLA.

160.    In response, by electronic mail, on December 27, 2019, Defendant Ilana Yamtoobian threatened to file a civil legal action against John Doe 1 for harassment and further called him "an unethical human being and a lowlife."

161.    On December 28, 2019, Defendant David Duel sent correspondence to John Doe 1, via electronic mail, notifying him that they would be filing a civil lawsuit against him for "damages you have attempted to cause to our company and family name" and further threatening John Doe 1 that he would not find the housing department and city to be as generous as the Defendants have been.

### John Doe 2

162.    John Doe 2 is believed to have lawfully resided at a unit of the 351 N. Sierra Bonita Avenue property owned and operated by the Urban Blox criminal enterprise.

163.    In or around May of 2019, John Doe 2 contacted Defendant David Duel via text message to notify him that the tenants of 351 N. Sierra Bonita Avenue are suffering as a result of Defendants refusal to repair the dangerous and untenable conditions on the subject property. John Doe 2 requested that Defendant David Duel make it a top priority.

164.    In response, on May 15, 2019, Defendant David Duel responded, via text message, stating the following: "We know u[sic] reported us to housing.. Be prepared an

epic blowback. Ur[sic] a piece of work. Screenshot and save us this and lawyer up if u[sic] like… This will cost u[sic] dearly and u[sic] will c[sic]. If it wasn't u[sic] I'm sorry but they said tall guy across the street."

## THE URBAN BLOX CRIMINAL ENTERPRISE

165.   In 1979, the City of Los Angeles adopted the Rent Stabilization Ordinance ("RSO") (Chapter XV of the Los Angeles Municipal Code) in response to critical shortages in safe and sanitary affordable rental housing, as discussed above.

166.   The Los Angeles RSO requires Landlords to register rental units with the Housing and Community Investment Department of the City of Los Angeles ("HCID") and further regulates annual rent increases. The Los Angeles RSO does not allow landlords to evict tenants on an "at-will" basis. Rather, the Los Angeles RSO provides landlords with the opportunity to evict a rent-controlled tenant and raise rents to market rate only under specific enumerated reasons, such as, amongst other things: the tenant voluntarily moves out; the tenant fails to pay rent and is lawfully evicted; or the tenant accepts a buyout agreement.

167.   The Urban Blox criminal enterprise describes itself as "a privately held real estate investment and development firm, operating primarily as a family office [that has] acquired over 100 assets with a focus on well located multifamily and creative commercial properties." In reality, the Urban Blox criminal enterprise was formed to acquire several rent-controlled properties (collectively "the Urban Blox Properties"), including, but not limited to, 438 N. Vista Street, Los Angeles, CA ("438 N. Vista"); 49 Thorton Ave., Los Angeles, CA ("49 Thornton"); and 351 N. Sierra Bonita Ave., Los Angeles, CA ("351 N. Sierra Bonita"), with the common purpose of removing "rent-controlled" tenants and raising the rents to market rates, in order to unjustly enrich the Defendants at the expense of disabled, low-income, elderly, and long-term rent-controlled tenants. The criminal and fraudulent conduct described herein was also carried out in a similar fashion on almost every tenant and virtually every property acquired by the Urban Blox criminal enterprise.

168.   The common purpose of the Urban Blox criminal enterprise was achieved by

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

defrauding rent-controlled tenants, as well as numerous government entities and California Courts in order to extinguish the rent-controlled tenant's possessory rights in their respective apartment units in the Urban Blox Properties.

169. The Urban Blox criminal enterprise devised, intended to devise and participate in - and did devise and participate in - an illegal scheme and artifice to defraud such tenants in an effort to obtain recovery of the Urban Blox Properties (and units contained therein) by means of criminal pretenses, and in order to re-rent these units at market rates and gain revenue therefrom, all as more fully described herein. Each Defendant named in this Complaint, and others named herein as Does 1 through 100, acted with knowledge of this agreement and scheme among them and specifically agreed that this plan and scheme would be conducted and furthered by the acts alleged herein.

170. Each member of the Urban Blox criminal enterprise acted with knowledge of this scheme, knowing their acts and omissions described herein were fraudulent and misleading to the tenants at whom they were targeting, intending such tenants to rely on the fraudulent and misleading actions of the Urban Blox criminal enterprise, and knowing that such fraudulent and misleading actions would influence and/or force such tenants to abandon their rent-controlled units in the Urban Blox Properties.

171. Each member of the Urban Blox criminal enterprise played a role in participating in and furthering the common purpose of the enterprise. The conduct of the Urban Blox criminal enterprise, as described above, demonstrates the harm and impact that Defendants' common business plan and scheme has caused with respect to Plaintiff and other similarly situated tenants.

172. The Urban Blox criminal enterprise enacted a common plan and scheme to target disabled, low-income and elderly tenants as victims of their fraud and unfair business practices, knowing that such individuals were more likely to be victimized and less likely to have the resources to combat the scheme.

173. As a necessary and intentional part of Defendants' common plan and scheme to recover rent-controlled units of the Urban Blox Properties, the Urban Blox criminal

enterprise operated under various business names, corporate entities and shell companies, and further utilized several false and fraudulent personal identities, in furtherance of the common purpose of the enterprise. The Urban Blox criminal enterprise would correspond with tenants via telephone, electronic mail and United States mail under various business names and personal identities for the purpose of confusing tenants and masking the relentless and harassing nature of their contact. The Urban Blox criminal enterprise would frequently transfer ownership of a property to a different business name (also owned by the Urban Blox criminal enterprise) in order to confuse tenants and attempt to manufacture pretextual lease violations for nonpayment of rent. Furthermore, members of the Urban Blox criminal enterprise would hold themselves out as "independent mediators" or parties otherwise having no interest in the ownership of the subject Urban Blox Property during correspondence with tenants in order to defraud tenants into disclosing compromising information and/or intimidate tenants into voluntarily abandoning their rent-controlled unit. Members of the Urban Blox criminal enterprise would also misrepresent the enterprise to be a small family-owned business in order to gain sympathy from rent-controlled tenants and influence them to voluntarily surrender possession of their rent-controlled units.

174. As a necessary and intentional part of Defendants' common plan and scheme to recover rent-controlled units of the Urban Blox Properties, Defendants fraudulently induced rent-controlled tenants into disclosing information that assisted Defendants in identifying and targeting disabled, elderly and low-income tenants who were more likely to be victimized and less likely to have the resources to combat Defendants' scheme. Specifically, Defendants, through United States mail and electronic mail, provided rent-controlled tenants with a "questionnaire" that Defendants fraudulently represented was necessary to determine the amount of relocation payment obligations. Such rent-controlled tenants relied on Defendants' misrepresentations and provided Defendants with information, including age and disability status, which Defendants used to identify tenants as vulnerable targets of their scheme.

**COMPLAINT**

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

175.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their rent-controlled units through threats of force, threats of litigation, and false allegations of slander, libel, sexual assault and abuse.

176.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their rent-controlled apartments through misleading and fraudulent offers to "buy-out" the tenancies of rent-controlled tenants. In so doing, Defendants misrepresented to those tenants that such offers would benefit the tenant, when in fact, the tenant would suffer significant financial loss by abandoning the rent-controlled apartment. Members of the Urban Blox criminal enterprise misrepresented to those tenants that if they consulted with an attorney, that the attorney would only take a portion of their buyout funds, leaving the tenant with less money. Members of the Urban Blox criminal enterprise further misrepresented their identities in making such offers, fraudulently holding themselves out as "independent mediators" seeking to assist the tenant in the buy-out process. The Urban Blox criminal enterprise would persist in making such fraudulent offers, often increasing dollar amounts or accompanying such offers with threats of consequences, despite receiving clear indication from tenants that they are not interested in relinquishing possession of their rent-controlled unit.

177.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their rent-controlled apartments through misleading and fraudulent offers to "buy-out" the tenancies of rent-controlled tenants when they had no intention to pay the offered buy-out. In so doing, the Urban Blox criminal enterprise misrepresented to those tenants that such offers would actually be paid to the tenants upon vacating the rent-controlled apartment. Tenants of the Urban Blox criminal enterprise have relied upon the promise of Defendants that they would receive a buy-out upon agreeing to surrender possession of their rent-controlled unit. However, upon the tenant's abandonment of the rent-controlled apartment,

Defendants ceased all communications with the tenant and refused to issue the agreed upon "buy-out" payment.

178.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to recover rent-controlled units of the Urban Blox Properties through manufacturing pretextual violations and/or conditions for which they sought unlawful evictions of the rent-controlled tenants and/or used such pretextual violations as a weapon to coerce the rent-controlled tenants to abandon the apartment unit. Specifically, Defendants would collect and hold rent payments for several months without cashing them. Defendants would then send tenants Notices to Pay Rent or Quit in order to justify seeking an illegal eviction of the tenant under the California Civil Code and/or the rental agreement. The rent-controlled tenants justifiably relied on the service of such Notices and feared they would be required to voluntarily surrender their Unit or otherwise face significant legal costs and exposure. The tenants were ultimately forced to either surrender their unit or seek legal advice at significant cost.

179.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to recover rent-controlled units of the Urban Blox Properties by unlawfully changing the locks to tenants' units while the tenant was out of town or temporarily relocated due to untenable conditions that Defendants refused to repair. The Urban Blox criminal enterprise would not provide notice to the tenant that the locks would be changed, nor would the tenants be provided access/keys to the new locks.

180.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to recover rent-controlled units of the Urban Blox Properties by serving tenants with summons, discovery, and court notices at their former Unit after Defendants had unlawfully divested the tenant of possession of their Unit. The Urban Blox criminal enterprise would declare under penalty of perjury that such documents were served on the tenant, by mailing such documents via United States mail or by posting such documents to the subject unit of the Urban Blox property. This was done with knowledge that service had not actually been effected upon the tenant and with the intent of securing fraudulent

discovery orders, judgments, and/or evictions against rent-controlled tenants.

181.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to defraud tenants out of rent monies by providing substandard and untenable living conditions.

182.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to unlawfully evict tenants who lawfully asserted their rights not to pay rent for a substandard and untenable apartment unit.

183.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their rent-controlled units through continuous and unlawful inspections, as well as repeated unannounced entries into rent-controlled units that were not related to necessary repairs or services. The tenants frequently consented to unlawful inspection requests or demands based on representations of the Defendants that more severe consequences would result from their failure to consent.

184.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their apartments by relentlessly harassing and threatening rent-controlled tenants to abandon possessory rights in their apartments.

185.   The Urban Blox criminal enterprise conspired and enacted a common plan and scheme to coerce rent-controlled tenants to abandon possessory rights in their apartments by creating dangerous and untenable conditions within their tenants' units and refusing to repair or remediate such conditions.

186.   As a necessary and intentional part of the Urban Blox criminal enterprise's scheme to defraud and recover possession of the rent-controlled apartments, Defendants did and do transmit by interstate telephone call and United States mail a substantial portion of the communications required to further said scheme and plan. Those Defendants have made it their regular business practice to utilize such avenues of communication to transmit threatening and misleading move-out demands; move-out

offers; questionnaires; inspection demands; demands for private information; and correspondence. As a result, those Defendants also utilize these channels of communication to make false and misleading statements to those tenants, as described more fully above, and for the purpose of influencing those tenants into abandoning the possessory rights to their rent-controlled apartments. Furthermore, upon information and belief, the Urban Blox criminal enterprise shared revenue derived from tenant's rent checks, including Plaintiff's, either through U.S. Mail, interstate wire transfer, or both.

187. The behavior of Defendants, as stated above, establishes a pattern of racketeering behavior knowingly understood and undertaken by all Defendants, for the express purpose of defrauding rent-controlled tenants and depriving such tenants of their rights to quiet enjoyment of their apartments.

188. This behavior of Defendants has been taken in reckless disregard to the serious health risks and safety of the rent-controlled tenants.

189. Defendants' vile and predatory behavior is longstanding and will likely persist and pose a significant safety threat to rent-controlled tenants throughout Los Angeles.

## **FIRST CAUSE OF ACTION**

### **(For Violation of 18 U.S.C. § 1962(c) Against all Defendants)**

190. Plaintiff re alleges and incorporates herein by reference each and every allegation set forth hereinabove, inclusive, as though set forth at length herein.

191. Defendants, and each of them, have committed these acts stated in this case, engaging in patterns of unlawful activity.

192. Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

193. The Urban Blox criminal enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of Defendants, including their employees and agents. The Urban Blox criminal enterprise was created and used as a tool to effectuate

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Defendants' pattern of racketeering activity.

194.    The Urban Blox criminal enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of defrauding and removing long-term rent-controlled tenants from their rent-controlled apartments in an effort to recover possession of the apartments and raise rents to market rates, all for Defendants' own unjust enrichment and/or financial gain.

195.    Defendants exerted control over the Urban Blox criminal enterprise and participated in the operation and/or management of the affairs of the Urban Blox criminal enterprise.

196.    Defendants have conducted and participated in the affairs of the Urban Blox criminal enterprise through a "pattern" of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), in that their scheme, which includes multiple instances of mail fraud and wire fraud as described in more detail above, affects numerous tenants of various properties.

197.    Defendants have engaged in the following acts, among others, which are and were necessary acts in their scheme to defraud Plaintiff and other similarly situated tenants into surrendering possession of their rent control apartments in an effort to recover possession of the apartments and raise rents to market rates, all for Defendants' own unjust enrichment and/or financial gain, and with knowledge by Defendants that such conduct was fraudulent at the time it was committed:

    a.    Corresponding with Ms. Rosen and other similarly-situated tenants prior to acquisition of the subject Urban Blox Property to misrepresent that the tenants were required to move out upon transfer of the Property to new owners in an effort to recover possession of the rent-controlled unit and raise the rent to market rates;

    b.    Mailing Ms. Rosen and other similarly-situated tenants "Notices of Entry" and therein representing that there was a lawful purpose for such entry when the actual purpose of doing so would be to allow

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

Defendants to collect information to support their unlawful attempt to recover possession of the rent-controlled unit and raise the rent to market rates;

c.   Corresponding with Ms. Rosen and other similarly-situated tenants through numerous business entities and fraudulent personal identities in order to confuse the tenants into voluntarily abandoning possession of their rent-controlled unit so Defendants could raise the rent to market rates;

d.   Mailing Ms. Rosen and other similarly-situated tenants "Notices to Quit" or "Notice to Pay Rent or Quit", and therein misrepresenting that there were sufficient grounds to allow Defendants to legally recover possession of the rent-controlled unit in a legal proceeding in an effort to recover possession of the rent-controlled unit and raise the rent to market rates;

e.   Corresponding with Ms. Rosen and other similarly-situated tenants to offer "buy-outs" of the tenancies of rent-controlled tenants. In so doing, Defendants misrepresented to those tenants that such offers would benefit the tenant, when in fact, the tenant would suffer significant financial loss by abandoning the rent-controlled apartment in an effort to recover possession of the rent-controlled unit and raise the rent to market rates;

198.   The Urban Blox criminal enterprise utilized interstate mail and wires for the purpose of obtaining money or property by extinguishing Plaintiff's and similarly situated tenants' possessory rights in the Property by means of omissions, false pretenses and misrepresentations described herein.

199.   The Urban Blox criminal enterprise also used the Internet and other electronic facilities to carry out the scheme and fraudulent activities, including the continued unlawful renting of the Property.

**COMPLAINT**

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

200.   The Urban Blox criminal enterprise also communicated by U.S. Mail and by interstate electronic mail with government entities and other third-party entities in furtherance of the scheme, including Los Angeles Housing and Community Investment Department, Los Angeles Superior Court, and Los Angeles Department of Building and Safety.

201.   The mail and wire transmissions described herein were made in furtherance of the Defendants' scheme and common course of conduct to unlawfully extinguish Plaintiff's possessory rights in the Property and unjustly enrich themselves.

202. Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Plaintiff and similarly situated tenants to lose their possessory rights in their property and unjustly enrich the Urban Blox criminal enterprise.

203.   The Urban Blox criminal enterprise engaged in and affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

204.   Plaintiff has been injured in that he, among other things, suffered severe financial harm, was deprived of her right to privacy and quiet enjoyment of her property, and was forced to abandon property for which he held a valid possessory right.

205.   Had the Defendant not committed the above-described racketeering activities, Plaintiff would not have been injured. Thus, Plaintiff's injuries were directly and proximately caused by Defendants' racketeering activity.

206.   By these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION

### (For Violation of 18 U.S.C. § 1962(d) Against all Defendants)

207.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein.

**COMPLAINT**

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

208.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

209.    Defendants have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct described herein through a pattern of racketeering activity.

210.    As described above, Defendants have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including multiple fraudulent wires and mails.

211.    The nature of the above-described acts in furtherance of the conspiracy gives rise to an inference that Defendants conspired to violate 18 U.S.C. § 1962(c) and were aware that their fraudulent acts have been and are a part of a pattern of racketeering activity.

212.    At all times, Defendants were aware of the nature of the Urban Blox criminal enterprise and intended to participate in it.

213.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff has been injured and continues to suffer injury, as set forth above.

214.    By these violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### (For Fraud/Intentional Misrepresentation Against all Defendants)

215.    Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

216.    Defendants engaged in a business practice designed to unlawfully remove long-term, low rent tenants from Defendants' properties through fraudulent material misrepresentations.

217.    Each allegation described in Paragraphs 109-124 above contains material fraudulent misrepresentations made by Defendants or their agents, with knowledge of its falsity, and with intent to defraud Plaintiff and similarly situated tenants into forfeiting possession of her rental Unit.

218.    Defendants intended for Plaintiff to rely on their misrepresentations and Plaintiff justifiably relied on the material misrepresentations of Defendants described in Paragraphs 109-124 above in taking action, or in failing to take action, including vacating her Unit.

219.    As a result of Defendants' fraudulent misrepresentations, Plaintiff was harmed in that he was deprived of her valid possessory rights in the Property.

220.    Defendants' misrepresentations to Plaintiff and fraudulent scheme allowed Defendants to unlawfully recover possession of Plaintiff's rental Unit.

221.    Plaintiff's reliance on Defendants' misrepresentations was a substantial factor in causing her harm.

222.    As a direct and proximate result of this fraudulent conduct by Defendants, Plaintiff suffered and continues to suffer emotional distress, mental suffering, physical distress and injury, physical manifestations of emotional distress, sickness, and other personal injuries and emotional distress, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

223.    As a further direct and proximate result of this fraudulent conduct by Defendants, Plaintiff has suffered personal property damage and economic loss, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

224.    In addition, since the Defendants acted in an intentional, reckless, malicious,

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## FOURTH CAUSE OF ACTION

### (For Fraudulent Concealment Against all Defendants)

225. Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

226. Defendants intentionally and fraudulently concealed from Plaintiff their scheme, as detailed above, to coerce Plaintiff to voluntarily relinquish possession of her rent-controlled unit or otherwise unlawfully evict Plaintiff from her unit so that Defendants could raise rent to market rate.

227. Defendants intentionally and fraudulently concealed from Plaintiff their scheme to refuse to make repairs to Plaintiff's unit in order to force Plaintiff to temporary vacate her unit so that Defendants could change the locks to Plaintiff's unit, divesting him of possession of the unit.

228. The foregoing material facts were only known to Defendants and Plaintiff could not have discovered these facts through exercise of reasonable diligence.

229. Defendants intended to deceive Plaintiff and actively concealed these material facts from Plaintiffs or otherwise prevented Plaintiff from discovering these facts.

230. Had the concealed facts been disclosed, Plaintiff would not have temporarily vacated the Property and/or would have otherwise behaved differently.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

231.   Defendants' concealment was a substantial factor in causing Plaintiff's harm.

232.   As a direct and proximate result of this fraudulent conduct by Defendants, Plaintiff suffered and continues to suffer emotional distress, mental suffering, physical distress and injury, physical manifestations of emotional distress, sickness, and other personal injuries and emotional distress, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

233.   As a further direct and proximate result of this fraudulent conduct by Defendants, Plaintiff has suffered personal property damage and economic loss, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

234.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## FIFTH CAUSE OF ACTION

**(For Unlawful Eviction Against Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

235.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

236. Defendants owned, possessed, managed, operated, and controlled the Property of which Ms. Rosen was a tenant.

237. At all relevant times the Property and Plaintiff's Unit were subject to the Los Angeles Rent Stabilization Ordinance codified by Los Angeles Municipal Code ("LAMC") sections 151.01, et seq.,

238. Through the conduct alleged herein, including, without limitation, defrauding Ms. Rosen into abandoning her Unit and refusing to make repairs to untenable conditions in Plaintiff's Unit, Defendants wrongfully evicted Plaintiff from the Property.

239. As a direct and proximate result of her unlawful eviction, Plaintiff has suffered and continues to suffer emotional distress, mental suffering, physical distress and injury, physical manifestations of emotional distress, sickness, and other personal injuries and emotional distress, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

240. As a further direct and proximate result of her unlawful eviction, and the physical and emotional distress suffered as a consequence, Plaintiff was required to employ physicians and other healthcare professionals to diagnose and treat her illnesses, physical manifestations of emotional distress and personal injuries. Plaintiff does not know at this time the exact amount of expenses that he has incurred and will incur in the future due to her displacement from the Property and the injuries alleged herein.

241. As a further direct and proximate result of her unlawful eviction, Plaintiff has suffered economic loss including but not limited to lost earnings, increased rent, and/or moving expenses, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

242. In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive

and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## SIXTH CAUSE OF ACTION

### (For Negligence Against all Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)

243.    Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

244.    By acquiring and/or managing the Property and/or assuming a landlord tenant relationship with Plaintiff, Defendants owed Plaintiff the duty to exercise reasonable care in Defendants' ownership, management, maintenance and control of the Property and Premises, and the duty to provide quiet enjoyment of the Property.

245.    The duties owed by Defendants, as landlord and/or owners, managers, or agents thereof, to Plaintiff to exercise reasonable care included, but were not limited to, the duty to provide safe and habitable housing, the duty to comply with all applicable state and municipal laws governing housing standards and Plaintiff's rights as a tenant, including, but not limited to, those standards set forth in Sections 1941 and 1941.1 of the Civil Code, and/or maintaining the common areas of Property in a non-negligent manner.

246.    Defendants so negligently and carelessly owned, operated, maintained and/or managed the Property and Plaintiff's Unit, by failing to provide habitable conditions at the Property and Plaintiff's Unit, repair the dangerous and harmful conditions at the Property and Plaintiff's Unit, protect Plaintiff's property from physical damage, and/or protect Plaintiff's quiet enjoyment of Plaintiff's Unit, as to breach each of the duties they owed to Plaintiff.  In addition, Defendants knew or should have known that Plaintiff would

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

suffer sickness and personal injury as a result of her exposure to mold, asbestos, mildew, and moisture caused by Defendants' continued failure and refusal to remedy the untenantable conditions.

247.    As a direct and proximate result of these breaches of duty by Defendants, Plaintiff suffered and continues to suffer emotional distress, mental suffering, physical distress and injury, physical manifestations of emotional distress, sickness, and other personal injuries and emotional distress, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

248.    As a further direct and proximate result of these breaches of duty by Defendants, Plaintiff has suffered personal property damage and economic loss, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

## SEVENTH CAUSE OF ACTION

**(For Nuisance against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

249.    Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

250.    The dangerous and harmful conditions in and at the Property and Plaintiff's Unit as alleged in this Complaint were injurious to Plaintiff's health and indecent and offensive to her senses, and interfered with Plaintiff's comfortable and quiet enjoyment of Plaintiff's Unit.    Defendants' acts and omissions directly affected the health and well-being of Plaintiff.    Defendants failed and refused to abate the conditions in the Property despite notice of the conditions and a reasonable opportunity to abate them.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

251.  These dangerous and harmful conditions constituted a private nuisance within the meaning of Sections 3479 and 3481 of the Civil Code.

252.  Defendants knew (from direct observation, common sense and being so advised by Plaintiff) that, if they failed to prevent and repair the water intrusion problems in and at Plaintiff's Unit and abate the resulting mold infiltration, Plaintiff could no longer live in and quietly enjoy Plaintiff's Unit, which would become uninhabitable, and Plaintiff's health would be adversely affected.  Notwithstanding Defendants' direct, prior and ongoing awareness of the impact of their acts and omissions upon Plaintiff, Defendants failed and refused to repair the water intrusion or abate the resulting mold infiltration.

253.  As a direct and proximate result of Defendants' maintenance of the nuisance, Plaintiff suffered property damage and economic loss caused by water intrusion and the infiltration of mold into Plaintiff's Unit, in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

254.  As a further direct and proximate result of Defendants' maintenance of the nuisance, Plaintiff suffered and continues to suffer serious emotional and physical injury and emotional distress, in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

255.  Defendants' acts and omissions were extreme and outrageous in that Defendants knew that the same violated Defendants' legal duties to Plaintiff and would and did cause Plaintiff mental torment, physical harm, physical manifestations of emotional distress, grief and other serious injuries to her mind, body, finance and well-being.

256.  Defendants' acts and omissions were intentional (not accidental), deliberate, willful and done knowing they would create a nuisance to Plaintiff.

257.  The conduct of Defendants described herein was done and is being done with willful and conscious disregard of Plaintiff's known rights, with reckless disregard of Plaintiff's health and safety and with the intent to vex, injure and annoy Plaintiff, such as

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

to constitute oppression, fraud, or malice under Civ. C. § 3294. Defendants' acts and omissions constituted an intentional abuse of their authority over Plaintiff. Plaintiff is thus entitled to an award of punitive damages in an amount appropriate to punish and make an example of Defendants.

## EIGHTH CAUSE OF ACTION

**(For Breach of the Implied Warranty of Habitability against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

258. Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

259. Among other dangerous conditions, the water intrusion and mold in and throughout Plaintiff's Unit resulted in a dangerous and harmful condition that rendered Plaintiff's Unit uninhabitable and unfit for human occupation.

260. Defendants had actual and constructive knowledge of this dangerous and uninhabitable condition, but failed to remedy it.

261. This dangerous condition was not caused by the wrongful or abnormal use of the property by Plaintiff or anyone acting under her authority.

262. By entering into a lease, and assuming a landlord-tenant relationship with Plaintiff, Defendants impliedly warranted that the property were and would be habitable pursuant to Cal. Civ. Code § 1941 et seq. By failing to remedy this dangerous, uninhabitable condition or respond to Plaintiff's repeated requests for repairs, Defendants breached their implied warranty of habitability to Plaintiff.

263. As a direct and proximate consequence of Defendants' breach of this covenant, the rental value of the property was greatly, if not totally, diminished, to Plaintiff's damage.

264.   As a further direct and proximate consequence of Defendant's breach of this covenant, Plaintiff suffered personal injury, property damage and economic loss, including loss of quiet enjoyment, caused by water intrusion and the infiltration of mold in and at the property, in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

265.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## NINTH CAUSE OF ACTION

**(For Breach of the Implied Covenant of Quiet Enjoyment against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

266.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

267.   By entering into a lease, assuming a landlord-tenant relationship with Plaintiff, and managing and maintaining Plaintiff's Unit and surrounding common areas, Defendants owed Plaintiff the duty to exercise reasonable care in Defendants' ownership, management, maintenance and control of the property.

268.   Implied in each rental agreement in California, oral or written, is a covenant that the landlord will not interfere with the tenant's quiet enjoyment of the premises during

the term of her or her tenancy. Cal. Civ. Code § 1927 specifically provides that "(a)n agreement to let upon hire binds the letter to secure the hirer the quiet possession of the thing hired during the term of the hiring…," and as such, this duty applied to Defendants as owners and/or managers of the property.

269.  Defendants have and had a duty to abide by the implied covenant of quiet enjoyment. Defendants breached this duty and the implied covenant by their conduct described above, including but not limited to, failing to repair unsafe, unsanitary, and uninhabitable conditions at the premises, relentlessly harassing and threatening Plaintiff, and failing to maintain the premises in habitable condition.

270.  Defendants knew, reasonably should have known, or would have learned through reasonable inspection, that Plaintiff would suffer damage as a result of this breach. Plaintiff and various entities sent Defendants and their agents numerous complaints regarding the uninhabitable conditions, and as such, Defendants and their agents were made aware on multiple occasions of the uninhabitable and untenantable conditions at the property which breached Plaintiff's right to the quiet enjoyment of the property.

271.  As a direct and proximate result of the Defendants' breach of the covenant of quiet enjoyment, the value of the leasehold held by each Plaintiff was and has been diminished. Consequently, Plaintiff was and has been damaged in an amount equal to the rental payments due and paid during each Plaintiff's leasehold, or in an amount to be proven at trial.

272.  As a direct and proximate result of Defendants' conduct, each Plaintiff suffered illness, physical injury, mental stress, emotional distress, discomfort, annoyance, depression, anxiety, fear for safety, loss in the value of her or his leasehold, property damage, and lost income, all to each Plaintiff's damage in an amount to be determined according to proof at trial, but which amount is within the jurisdictional requirements of this Court.

273.  In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public,

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## TENTH CAUSE OF ACTION

**(Housing Discrimination in Violation of FEHA [Gov.C § 12955] against all Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

274.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

275.   At all relevant times mentioned herein FEHA was in full force and effect. The provisions of FEHA, including inter alia, Government Code § 12955, prohibit persons, such as Defendants, from engaging in housing discrimination against a tenant on the basis of that tenant being a member of a protected class.

276.   By virtue of the above-described conduct, Defendants are liable for unlawful discrimination in violation of FEHA because Defendants harassed and discriminated against Plaintiff in the context of providing housing accommodations based on Plaintiff, either belonging to a protected class, or associating with a member of a protected class. Specifically, at all times alleged herein, Plaintiff was disabled as defined by California Civil Code § 1761 in that Plaintiff was suffering from a physical and/or mental impairment. Accordingly, Plaintiff belonged to or associated with the protected classes based upon disability.

277.   At all times alleged herein Defendants and each of them were aware that Plaintiff was a member of a protected class.  Defendants were further aware that insofar as Plaintiff had requested repairs to hazardous conditions in Plaintiff's Unit, it was to accommodate Plaintiff relating to Plaintiff's disability, and resulting needs.  Defendants were aware that without making the repairs, Plaintiff would not be afforded an equal opportunity to use and enjoy the property.  Moreover, Defendants were aware that their failure to remedy to unsafe and unsanitary condition of the Property, would have a disparate impact on those members of a protected class such as Plaintiff, and that Defendants' failure and refusal to remedy the unsafe and unsanitary condition of the Property, in fact had a disparate impact on Plaintiff because they were members of a protected class.

278.   As a direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer out-of-pocket losses in an amount according to proof.

279.   As a further direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer actual damages in the loss of use of the Premises, and emotional injuries, inter alia, emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and other non-pecuniary losses in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

280.   As a further direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has been caused to retain attorneys and has thus incurred, and will continue to incur legal fees, expenses and costs, entitling Plaintiffs to reimbursement of same pursuant to Government Code § 12989.2, in an amount to be proven at trial.

281.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## ELEVENTH CAUSE OF ACTION

**(For Violation of Civil Code § 1940.2 – Against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

282.    Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

283.    Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, Defendants, inclusive, and each of them, owned, possessed, managed, operated, and controlled the Property of which Plaintiff was a tenant.

284.    Plaintiff has been subjected to Defendants' use of, or threats to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the Plaintiff's quiet enjoyment of the Property in violation of Civil Code § 1940.2 that would create an apprehension of harm in a reasonable person.

285.    As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of the quiet enjoyment of the Property by Defendants' attempts to force Plaintiff to relinquish her tenancy right in the property, and has suffered mental anguish and emotional and physical distress, all to her general damages.

286.    Plaintiff is entitled to recover civil penalties for each violation of Civil Code § 1940.2, under provisions of Civil Code § 1940.2(b).

///
///

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

## TWELFTH CAUSE OF ACTION

**(For Violation of Civil Code § 1942.5 – Against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

287.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

288.   Plaintiff, in good faith, gave notice to Defendants and/or made complaints to Defendants regarding the untenable conditions of Plaintiff's Unit.

289.   Defendants attempted to recover possession of Plaintiff's Unit by causing Plaintiff to involuntarily quit within 180 days of Plaintiff's complaint regarding tenability.

290.   As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of the quiet enjoyment of Plaintiff's Unit by Defendants' attempts to force Plaintiff to relinquish her tenancy right in the property, and has suffered mental anguish and emotional and physical distress, all to her general damages.

291.   Plaintiff is entitled to recover civil penalties for each violation of Civil Code § 1942.5.

292.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

///

**COMPLAINT**

## THIRTEENTH CAUSE OF ACTION

**(For Violation of Civil Code § 1954 – Against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

293.    Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

294.    Defendants, on at least one occasion, entered Plaintiffs residential dwelling unit and/or granted third parties the right to enter Plaintiffs residential dwelling unit without consent from Plaintiff, as stated herein.

295.    Defendants' purpose for entering Plaintiffs residential dwelling unit and/or granting third parties the right to enter Plaintiff's residential. dwelling unit without consent from Plaintiff was not for emergency purposes, to make necessary repairs, or because Plaintiff had abandoned or surrendered the premises nor pursuant to court order.

296.    Plaintiff was not given adequate notice to enter Plaintiff's residential dwelling unit and/or to grant third parties the right to enter Plaintiff's dwelling unit.

297.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial damages, including but not limited to economic losses in an amount to be determined at time of trial.

298.    As a further direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to Plaintiffs damage in an amount according to; proof at trial.

299.    In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## FOURTEENTH CAUSE OF ACTION

### (For Violation of Civil Code § 52.1 – Against All Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC

300.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

301.   Civil Code section 52.1 prohibits any person or persons, whether or not acting under color of law, from interfering by threat, intimidation, or coercion, or attempting to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of the state of California.

302. Defendants, by their threats, intimidation, or coercion, intentionally interfered or attempted to interfere with Plaintiff's exercise and enjoyment of her statutory rights secured by the above-referenced statutes and common law.

303.   As elaborated in the above Paragraphs, Defendants engaged in a course of conduct meant to force, threaten, and menace Plaintiff out of the Property in violation of the Plaintiff's rights under Los Angeles Rent Stabilization Ordinance.

304.   As a proximate result of Defendants' wrongful conduct, Plaintiffs suffered, and continue to suffer harm, in an amount according to proof.

305.   Pursuant to Civil Code section 52, Defendants are liable to Plaintiff in an

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

amount of statutory and punitive damages to be proven at trial, and for attorneys' fees and costs incurred in this action.

306.   Plaintiff is also entitled to injunctive relief and other equitable relief per Civil Code section 52.1, subsection (b).

## FIFTEENTH CAUSE OF ACTION

### (For Violation of The Unruh Civil Rights Act, Civil Code § 51 et seq Against All Defendants)

307.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

308.   California Civil Code §51 ("the Unruh Act") states that, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

309.   The Unruh Act defines physical disability to include any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that affects any one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine; and which limits a major life activity, broadly construed. Cal. Civ. Code § 51(e)(1); Cal. Gov. Code § 12926.

310.   At all relevant times, Plaintiff suffered and suffers from a physical disability within the meaning of the Unruh act. Defendants have denied Plaintiff full and equal accommodations at the Property because of her disability, instead targeting Plaintiff with

**COMPLAINT**

SCHIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

their illegal scheme because he was more vulnerable to being victimized as a result of her disability.

311.   As a direct and proximate result, Plaintiff suffered and continues to suffer emotional and physical distress and harm, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

312.   As a direct and proximate result, Plaintiff suffered economic loss, including, but not limited to, loss of her possessory interest in the property, to Plaintiff's damage in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial and has been compelled to incur attorney's fees.

313.   Plaintiff is further entitled to statutory damages in an amount up to three times the amount of actual damages for each violation of the Unruh Act.

314.   As a direct and proximate result of Defendants' conduct, Plaintiff is also entitled to attorneys' fees under Unruh, Civil Code § 52(a), in addition to interest, expenses, and costs of suit.

315.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## SIXTEENTH CAUSE OF ACTION

### (Unlawful Business Practices, Cal. Bus. & Prof Code § 17200] against all Defendants)

316.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

317. Defendants acts and omissions, as described in detail herein, including, without limitation, failure to comply with the Los Angeles Rent Stabilization Ordinance, California Civil Code §§ 1940.2, 1942.5, 51, 52.1, 789.3, and 1159 all constitute unlawful business practices as defined by Business and Professions Code § 17200.

318. The foregoing statutes were designed to protect the class of persons which contains Plaintiff as a member. Moreover, it was for Plaintiff's protection that the said statutes were adopted, and the statutes were designed to protect against the very peril that befell Plaintiff.

319. Plaintiff is informed and believes and thereon alleges that Defendants' acts and omissions as alleged herein, have affected many similarly situated tenants in properties owned by the Defendants. Defendants' unlawful business practices present a continuing threat to members of the public.

320. As a result of the aforementioned unlawful business practices, Plaintiff (and the public) have suffered injury in fact, and by this Complaint, Plaintiff seeks an injunction prohibiting the Defendants from engaging in further unlawful business practices.

## SEVENTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress against all Defendants)

321. Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

322. As alleged herein, Defendants' conduct was outrageous in that it was so extreme as to exceed the bounds of usually tolerated conduct of landlords in civilized society.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

323.   At all relevant times, Defendants intended to cause emotional distress to Plaintiff, in that their conduct was willful and intentional. Defendants had full knowledge and/or substantial certainty that their conduct would cause Plaintiff to suffer extreme mental distress and acted with intentional disregard for the rights and safety of Plaintiff and the foreseeable consequences of their conduct.

324.   Defendants acted with intent to cause Plaintiff to suffer severe emotional distress when they, among other things, relentlessly harassed Plaintiff to vacate her rent-controlled unit and when they broke into Plaintiff's unit and changed the locks, divesting him of possession of her unit and personal property.

325.   As a direct, legal and proximate result of the actions of Defendants, Plaintiff suffered severe emotional distress which has caused Plaintiff to sustain severe, serious and permanent injuries to her person, all to her damage in a sum to be shown according to proof and within the jurisdiction of the Superior Court.

326.   As a direct, legal and proximate result of the aforesaid actions of Defendants, Plaintiff was compelled to and did employ the services of hospitals, physicians and surgeons, nurses, and the like, to care for and treat him, and did incur hospital, medical, professional and incidental expenses, and Plaintiff is informed and believes, and upon such information and belief alleges, that he will necessarily by reason of her injuries, incur additional like expenses for an indefinite period of time in the future, all to Plaintiff's damage in a sum to be shown according to proof.

327.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

## EIGHTEENTH CAUSE OF ACTION

**(Bad Faith Retention of Security Deposit against all Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC**

328.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

329.   Defendants have, in violation of Civil Code § 1950.5, unreasonably and in bad faith withheld Plaintiff's security deposit without cause.

330.   As a result of the aforementioned acts, Plaintiff has suffered damages, and is entitled to return of the security deposit as well as statutory penalties under Civil Code § 1950.5.

## NINETEENTH CAUSE OF ACTION

**(Violation of Los Angeles Municipal Code, Article 5.3 against all Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)**

331.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

332.   Defendants have willfully and maliciously, and in bad faith, with respect to Plaintiff's Unit: reduced or eliminated housing services required by lease or law; failed to perform and timely complete necessary repairs and maintenance required by Federal, State, County, or local housing, health, or safety laws; abused the right of access into Plaintiff's Unit as established and limited by California Civil Code Section 1954,

including entering or photographing portions of a rental unit that are beyond the scope of a lawful entry or inspection; threatened Plaintiff with physical harm; attempted to coerce Plaintiff to vacate with offer(s) of payments; Misrepresented to Plaintiff that he is required to vacate Plaintiff's Unit and enticing Plaintiff to vacate Plaintiff's Unit through intentional misrepresentations or the concealment or omission of a material fact; Engaged in acts or omissions which interfered with the Plaintiff's right to use and enjoy Plaintiff's Unit and/or rendered Plaintiff's Unit unfit for human habitation and occupancy; Threatened and took action to terminate Plaintiff's tenancy, including service of notices to quit or other eviction notices and bringing actions to recover possession of a rental unit based on facts which Defendants had no reasonable cause to believe to be true; Refused to acknowledge or accept receipt of lawful rent payments as set forth in the lease agreement or as established by the usual practice of the parties or applicable law; Engaged in an activity prohibited by federal, state, or local housing anti-discrimination laws; and engaged in other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of Plaintiff and that caused or were committed with the objective to cause Plaintiff to surrender or waive any rights in relation to her tenancy.

333.    As a direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer out-of-pocket losses in an amount according to proof.

334.    As a further direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer actual damages in the loss of use of the Premises, and emotional injuries, inter alia, emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and other non-pecuniary losses in a sum exceeding the jurisdictional minimum of the Court, such sum to be precisely determined according to proof at trial.

335.    In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public,

SCHWIMER WEINSTEIN LLP
2665 MAIN STREET, SUITE 200
SANTA MONICA, CA 90405

including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## TWENTIETH CAUSE OF ACTION

### (Violation of Los Angeles Municipal Code, Article 5.3 against all Defendants Except Defendants Joseph Miskabi; Richard Daggenhurst; Law Office of Joseph Miskabi; Felman Daggenhurst & El Dabe; and Daggenhurst Law PC)

336.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

337.   Defendants' conduct violated Los Angeles County Code Section 8.52.130 by, amongst other things:  failing to perform repairs and maintenance required by rental agreement or federal, State, or local laws; influencing or attempting to influence Plaintiff to vacate Plaintiff's Unit through fraud, misrepresentation, intimidation or coercion; and interfering with Plaintiff's right to quiet use and enjoyment of Plaintiff's Unit.

338.   As a direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer out-of-pocket losses in an amount according to proof.

339.   As a further direct, foreseeable, legal and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer actual damages in the loss of use of the Premises, and emotional injuries, inter alia, emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and other non-pecuniary losses in a sum exceeding the jurisdictional minimum

of the Court, such sum to be precisely determined according to proof at trial.

340.   Plaintiff is further entitled to statutory damages for each violation of the Los Angeles County Code.

341.   In addition, since the Defendants acted in an intentional, reckless, malicious, despicable, wanton manner and with conscious disregard for the safety of the public, including Plaintiff, placing profits before safety, Defendants and each of them acted with malice, fraud and oppression as those terms are defined by the pertinent statutory and case law, including Civil Code Section 3294 and as such Ms. Rosen is entitled to punitive and/or exemplary damages as against Defendants and each of them in order to, among other things, punish the Defendants and deter the Defendants and others from pursuing similar conduct in the future.

## TWENTY-FIRST CAUSE OF ACTION

### (Recission against all Defendants)

342.   Plaintiff re alleges and incorporates herein by reference each and every allegation set forth in the Paragraphs hereinabove, inclusive, as though set forth at length herein, with the exception of any allegations of protected activity as defined by C.C.P. § 425.16(e)(1-4), as such allegations are meant only to provide context and do not form the basis of any material allegations supporting this cause of action.

343.   Plaintiff seeks recission of the "Cash for Keys" agreement. The "Cash for Keys" agreement, and each and every individual provision contained therein, is voidable or otherwise subject to rescission because, without limitation: any consent given by Plaintiff to the "Cash for Keys" agreement was procured by fraud on the part of Defendants; any consent given by Plaintiff to the "Cash for Keys" agreement was procured by duress and/or undue influence by Defendants; and the "Cash for Keys" agreement failed to comply with mandatory statutory requirements under LAMC 151.31. Defendants aforementioned conduct induced Plaintiff to sign the non-compliant agreement which she would not have otherwise done absent the fraud, duress and/or undue influence, and is sufficient to support recission.

**COMPLAINT**

344.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage in an amount according to proof, and has further been compelled to incur attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment on their Complaint as follows:

1.    For special and general damages according to proof;

2.    Punitive damages pursuant to Civil Code § 3294 in an amount sufficient to punish Defendants and each of them and to make an example of each of them in a sum which is in excess of the jurisdictional minimum of this Court;

3.    Statutory damages and civil penalties where applicable;

4.    Civil penalties pursuant to California Civil Code § 3345;

5.    Treble damages pursuant to 18 U.S.C. § 1964;

6.    For reasonable attorney's fees and costs (where applicable by contract and/or statute);

7.    Restitution of all monies due to Plaintiff, and disgorged profits from the unlawful business practices of Defendants pursuant to Bus. and Prof. Code § 17203;

8.    A permanent injunction pursuant to Bus. and Prof. Code § 17200, et sq. forever enjoining Defendants from: a) Filing and maintaining unlawful detainer actions except as provided for by law; b) Making threats of legal action except as provided for by law; c) Engaging in conduct designed to harass tenants and/or force tenants to voluntarily relinquish possession of their rental unit;

9.    Recission of the "Cash for Keys" agreement;

10.    Interest at the legal rate;

11.    Costs for suit incurred herein; and

12.    For such other further relief as this Court deems just and proper.

**COMPLAINT**

Dated: November 12, 2021          SCHWIMER WEINSTEIN LLP

_____
Michael E. Schwimer, Esq.
Mitch Rosensweig, Esq.
Attorneys for Plaintiff
ELIZABETH ROSEN


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues and causes of action alleged herein.

Dated: November 12, 2021          SCHWIMER WEINSTEIN LLP

_____
Mitch Rosensweig, Esq.
Attorney for Plaintiff
ELIZABETH ROSEN

**COMPLAINT**